APPEALS OF ELIZABETH M. ABELL, ELIZABETH M. ABELL, WALTER W. ABELL, MARY ABELL MORGAN, AND MARY ABELL MORGAN.

Docket Nos. 2693-2697. Submitted May 25, 1925. Decided April 23, 1926.

Haines H. Hargrett, Esq., for the taxpayers.
Ellis W. Manning, Esq., for the Commissioner.

Before Sternhagen, Lansdon, Green, and Love.

Abell, for the year 1920, $1,774.14; Elizabeth M. Abell, for the year 1919, $1,629.86; Walter W. Abell, for the years 1919 and 1920, $3,330.46; Mary Abell Morgan, for the year 1919, $1,877.21; and Mary Abell Morgan, for the year 1920, $1,919.98.

The deficiencies arose from the refusal of the Commissioner to permit the taxpayers to deduct their proportionate share of losses sustained by a trust upon the sale of capital assets and deducted by the trustee from the taxable income of the trust. The facts are not in dispute and have been stipulated, and the same question of law is involved in all of the appeals.

### FINDINGS OF FACT.

Edwin F. Abell died in the year 1904, while domiciled in the State of Maryland, leaving a last will and testament in words and figures as follows:

This is the last will and testament of Edwin F. Abell, of Baltimore, State of Maryland.

I give, devise and bequeath to my two sons, Arunah S. Abell and Walter W. Abell, and the survivor of them, and his heirs, personal representatives and assigns, all of the property, real and personal, joint or several, in possession or expectancy, legal or equitable, of which I may die seized or possessed, or to which I may be in any way entitled, at the time of my death.

In trust, nevertheless, for the following uses and purposes and for no other uses or purposes whatsoever:

I. To collect the rents, issues, income and profits thereof, and after paying the expenses of administering and managing said property, and a reasonable commission to themselves as trustees, to divide into four equal parts the net proceeds therefrom and pay the same to the following persons:

One of the said four equal parts is to be paid to my wife, Elizabeth Maxwell Abell, for and during her life in quarter-yearly installments.

One of the said four equal parts is to be paid to my daughter, Mary Abell Morgan, wife of James Dudley Morgan, to her sole and separate use, free from the control of her present husband or of any husband she may hereafter have, for and during the life of my said wife in quarter-yearly installments.

One of the said four equal parts is to be paid to my son, Arunah S. Abell, for and during the life of my said wife, Elizabeth Maxwell Abell, in quarter-yearly installments.

One of the said four equal parts is to be paid to my son, Walter W. Abell, for and during the life of my said wife, Elizabeth Maxwell Abell, in quarter-yearly installments.

Should any of my children die during the life of my said wife leaving issue living at the time of his or her death, the part or portion of said income directed to be paid to such child so dying is to be paid to the issue per stirpes of the child of mine so dying.

Should any child of mine die during the life of my said wife leaving no issue living at the time of his or her death, or leaving such issue and it should become extinct during the life of my wife, then the part or proportion of the said income theretofore paid to such child so dying, or to such issue so becoming extinct, is thereafter to be divided, share and share alike, between my said wife and any surviving children or child of mine, and issue then living

of any child of mine, then dead, such then living issue to take per stirpes a share equal to that to be paid to my wife or to any child of mine then living.

II. On the death of my said wife the said trustees or the survivors of them are to set apart or divide all of the property of every kind then held by them, subject to the trust hereby created, except such stock in the A. S. Abell Company of Baltimore City as my said sons, or the survivor of them then living may then hold in trust, into equal parts, and shall convey one of said equal parts to each of my children living at the time of the death of my wife, and one of said parts to the issue per stirpes then living of any child of mine who shall have died leaving issue which shall be living at the time of the death of my said wife, free and discharged of any trust.

But if my said daughter, Mary Abell Morgan, shall be living at the time of the death of my said wife, the part set apart for her is to be held by said trustees and the survivor of them, and his successor, and the rents and profits thereof are to be collected and paid over to her sole and separate use, free from the control of her present husband and of any husband she may hereafter have, during her life; and on her death I devise and bequeath such part or share to her issue living at the time of her death in such parts or proportions as my said daughter may by last will and testament, and in no other way appoint; and in default of such appointment, I devise and bequeath such share to her issue living at the time of her death, per stirpes.

III. On the death of my said wife leaving either of my said sons surviving her, I will and direct that any stock of the A. S. Abell Company of Baltimore City then held by the said trustees or the survivor of them, be held in trust until the death of the survivor of my said sons, trustees as aforesaid, and the income therefrom after paying the expense of administering the trusts, and a reasonable commission is to be paid over to my issue per stirpes, and on the death of such surviving trustee, sons of mine, the said stock is to go and pass free of any trust to my issue then living per stirpes.

IV. And I hereby authorize my said trustees or the survivor of them, or the successors in said trust, to sell and convey absolutely or by way of lease or otherwise dispose of said trust property or any part or parts thereof held by them or him at any time, and the proceeds thereof to invest in any other property or estate as they or he may deem expedient and proper; and with full power likewise to the said trustees, or survivor or successor to change such reinvestment or new investments from time to time to make; and such reinvestments or new investments are to be held subject to the same trusts hereunder as applied to the property sold or disposed of.

V. I constitute and appoint my said sons Arunah S. Abell and Walter W. Abell and the survivor of them executors of this my last will and testament; and I will and direct that my said sons and the survivors of them shall not be required to give bond either as executors or executor, trustees or trustee under this will.

I hereby revoke all other wills or codicils by me heretofore made.

The will was admitted to probate and, at all times hereinafter mentioned, the estate of Edwin F. Abell has been administered according to its provisions.

Under the provisions of said will, each of the taxpayers, in the years 1919 and 1920, was entitled to receive and did actually receive in " quarter-yearly installments " one-fourth of the " net proceeds " of " the rents, issues, income and profits " of said estate, after

" paying the expenses of administering and managing said property " and after deduction of " a reasonable commission " for the trustees. Another son, Arunah S. Abell, who under the provisions of the will was entitled to receive one-fourth, died prior to the years in controversy and is not involved in these appeals.

During the year 1919 the trust estate received income from many different sources, but it also sustained a loss of $49,914.95 upon the sale of securities theretofore owned and held by the trust as capital assets. Likewise, during the year 1920, the trust estate received income from many different sources, but it also sustained a loss of $59,756.16 from the sale of securities theretofore owned and held by the trust as capital assets.

The surviving trustee filed a fiduciary return, upon which he reported the gross income of the trust and deducted therefrom the aforesaid loss of $49,914.95 for the year 1919 and the loss of $59,756.16 for 1920.

In said returns he stated the net income of the trust, reported the taxpayers' names, and stated their proportionate share of such income. The amount so reported by the trustee as being the taxpayers' part of the net income and shown upon the return was less than the amount actually distributed to the taxpayers by the trustee in the respective years, for the reason that, under the provisions of said will and under the laws of the State of Maryland, the " net proceeds of rents, issues, income and profits " of the said estate were required to be and were distributed to the taxpayers and other beneficiaries of said trust without reduction for or on account of the estate's loss of capital.

The taxpayers filed their individual income-tax returns for the years 1919 and 1920 and reported for taxation one-fourth of the net taxable income of the trust, as computed and reported by the trustee upon his aforesaid fiduciary returns, and omitted the remainder of the amounts actually received from the trust.

Thereafter, the Commissioner made an audit of the aforesaid returns and, after examination thereof and over the protest and objection of the taxpayers, held that to the gross income reported by them upon their returns for the years 1919 and 1920 there should be added the sum representing one-fourth of the loss sustained by the trust upon its sale of capital assets in the years 1919 and 1920, respectively, and deducted by the trustee from the taxable income of the trust in making his aforesaid fiduciary return for that year, and asserted deficiencies as hereinbefore set forth.

OPINION.

STERNHAGEN : The issue upon which the determination of these appeals rests is the same in all respects as that decided by the Board in

the *Appeals of Louise P. V. Whitcomb et al.*, 4 B. T. A. 80, and, upon the authority of that decision, the Commissioner's position in respect of the right of beneficiaries to take deductions for capital losses is sustained. The deficiencies of the present petitioners should therefore be computed in accordance with the rule announced in that decision.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*